David Yeremian (Cal. Bar No. 226337)
david@yeremianlaw.com
DAVID YEREMIAN & ASSOCIATES, INC.
535 N. Brand Blvd., Suite 705
Glendale, California 91203
Telephone: (818) 230-8380

Trenton R. Kashima
trk@classactionlaw.com
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
Telephone: (619) 238-1333

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Jason T. Thompson (*pro hac vice*
forthcoming)
jthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Telephone: (248) 355-0300

*Trial Counsel for Plaintiff, Proposed Class,
and Collective Members*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| **DIONKA BANKS**, individually and on behalf of all others similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>**KAISER FOUNDATION HEALTH PLAN, INC.**, a California corporation,<br><br>Defendant. | **COMPLAINT FOR VIOLATION OF THE FLSA AND STATE LAW**<br><br>**CLASS ACTION, COLLECTIVE ACTION, AND REPRESENTATIVE ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff, Dionka Banks ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Kaiser Foundation Health Plan, Inc. ("Defendant"), and states as follows:

## INTRODUCTION

1.    This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA," or 29 U.S.C. § 201 *et seq.*); California Labor Code 221, 223, 226, 226.7, 510, 512, 1174, 1194, 1197, 1197.1, 1198; California Industrial Welfare Commission Wage Order No. 4; California Business & Professions Code § 17200; and California Labor Code § 2698 *et seq.*

2.    Defendant offers call center services to its patients and employs Member Service Representatives (hereinafter "MSRs") to receive and respond to patient phone calls, among other duties.

3.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's MSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.

4.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

5.    More specifically, Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id*.  Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

6.      Defendant employs MSRs in brick-and-mortar class center facility located in Corona, California.

7.      Defendant requires its MSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the MSRs for all work performed. Specifically, Defendant fails to pay MSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift. Defendant's illegal compensation practices and policies result in MSRs not being paid for all time worked, including overtime.

8.      Defendant requires MSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the MSRs' work, as they cannot perform their jobs effectively without them.

9.      Defendant's MSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

10.     Pursuant to Defendant's illegal compensation practices and policies, MSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping system. In addition, Defendant fails to pay MSRs for time spent prior to each shift locating equipment (including chairs).

11.     The individuals Plaintiff seeks to represent in this action are current and former MSRs, who are similarly situated to herself in terms of having been subjected to Defendant's violations of federal and state law.

12.     Defendant knew or could have easily determined how long it takes for MSRs to complete the above described off-the-clock work, and Defendant could have

properly compensated Plaintiff and the putative Class for this work, but did not.

13.    Plaintiff seeks a declaration that her rights, and the rights of the putative Class, were violated, an award of unpaid wages (including overtime), an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and award of attorneys' fees and costs to make herself and the putative Class whole for the damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

14.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

15.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

16.    Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.   Defendant's employees, including the Plaintiff in this case, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis.

17.    This Court has original jurisdiction over Plaintiff's state law class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). The aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and this is a case in which at least some members of the proposed classes have a different citizenship from Defendant.

18.    The court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 because the state law claims and the federal claim are so

closely related that they form part of the same case or controversy under Article III of the United States Constitution.

19.     The court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

20.     The court has personal jurisdiction over Defendant because Defendant is domiciled in the state of California, conducts business within the state of California, employs individuals within the state of California, and is registered with the California Department of the Secretary of State.

## VENUE

21.     Venue is proper in the Central District of California because Defendant employs MSRs in this district, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in the Central District of California.

## INTRADISTRICT ASSIGNMENT

22.     A substantial part of the events or omissions which give rise to the claims occurred in Riverside County, and therefore this action is properly assigned to the Eastern Division.

## PARTIES

23.     Plaintiff, Dionka Banks, is a resident of Riverside, California. She was been employed by Defendant as a MSR from August of 2015 through January of 2016 and signed a consent form to join this collective action lawsuit, which is attached hereto as *Exhibit A*.

24.     Additional individuals were or are employed by Defendant as MSRs during the past four years and their consent forms will also be filed in this case.

25.     Defendant, Kaiser Foundation Health Plan, Inc., is a California corporation headquartered in Oakland, California.  Defendant is licensed to do business in the State of California and its registered agent for service of process Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N,

Sacramento, CA  95833.

26.    Upon information and belief, Defendant has employed over one thousand (1,000) MSRs in California over the last four years.

27.    Plaintiff is informed and believes, and alleges thereon, that Defendant is responsible for the circumstances alleged herein, and proximately caused Plaintiff and similarly situated MSRs to be subject to the fraudulent, unlawful, unfair, and deceptive acts and practices complained of herein.

28.    At all times herein mentioned, Defendant approved of, condoned, and/or otherwise ratified each and every one of the acts or omissions complained of herein.

29.    At all times herein mentioned, Defendant's acts and omissions proximately caused the complaints, injuries, and damages alleged herein.

## GENERAL ALLEGATIONS

30.    Plaintiff, Dionka Banks, was formerly employed as a MSR for Defendant and worked from August of 2015 through January of 2016. Plaintiff was compensated at a base rate of $15-$16 per hour and typically worked approximately 40 or more hours per week (and more than 8 hours per day).  Plaintiff's typical schedule was Monday through Friday and her shift times varied each week: 8:00 a.m. – 5:00 p.m., 10:00 a.m. – 7:00 p.m., and 11:00 a.m. – 8:00 p.m., in the call center location of Corona, CA.

31.    Plaintiff and Defendant's MSRs are responsible for, among other things, responding to inbound telephone calls from patients of Defendant; evaluating the patients' needs and directing access to membership information and health plans.

32.    The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's MSRs, are homogenous; in July 2008, it issued Fact Sheet #64 to alert call center employees to some of the abuses, which are prevalent in the industry.

33.    One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

34.    More specifically, Fact Sheet #64 condemns an employer's non-payment of

an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

35.    Defendant employs MSRs in brick-and-mortar class center facilities located in Corona, Oakland, Panorama City, Rancho Cucamonga, Roseville, and San Diego, California.

36.    Defendant requires its MSRs to work a full-time schedule, plus overtime. However, Defendant does not compensate the MSRs for all work performed. Specifically, Defendant fails to pay MSRs for certain work performed "off-the-clock" at the beginning of each shift, during meal periods, and at the end of each shift. Defendant's illegal compensation practices and policies result in MSRs not being paid for all time worked, including overtime.

37.    Defendant requires the MSRs to use multiple computer programs, software programs, and applications in the course of performing their responsibilities. These programs and applications are an integral, indispensable, and important part of the MSRs' work, as they cannot perform their jobs effectively without them.

38.    Defendant's MSRs perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications, and phone systems.

39.    Pursuant to Defendant's illegal compensation practices and policies, MSRs are required to: 1) start-up and log-into computers, programs and applications, before each shift and *prior* to clocking into Defendant's timekeeping system; 2) perform computer, program and application shutdown and log-in tasks off-the-clock during their uncompensated meal periods; and 3) shut-down and log-out of computers, programs and applications, subsequent to each shift and *after* clocking out of Defendant's timekeeping

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

system. Additionally, Defendant fails to pay MSRs for time spent prior to each shift locating equipment (including chairs).

**A.    Pre-Shift Off-the-Clock Work**

40.    Pursuant to Defendant's policies, training, and direction, Plaintiff and all other MSRs are required to start up and log into various secure computer programs, software programs, and applications in order to access information. The pre-shift startup and login process takes substantial time on a daily basis with said time ranging from ten (10) to 15 minutes per day, or even longer when technical issues arise.

41.    Before clocking in when working in Defendant's call center locations, Plaintiff and each MSR must undertake the following essential work tasks in chronological order:

- First, the MSRs must locate necessary equipment including chairs.
- Next, the MSRs must turn-on/warm-up their computer.
- The MSRs are then required to start-up and log-in to the following programs/applications that are utilized during their shifts including, but not limited to: Citrix; Microsoft Outlook (e-mails); Internet Explorer, rSchedule planner; and several Interaction Client phone systems.
- Finally, the MSRs start-up and log-in to Defendant's timekeeping system, at which time they begin getting paid.

42.    Defendant's MSRs complete the above steps before being clocked-in and paid each shift; meaning that they are performing off-the-clock work in a range of no less than ten (10) to 15 minutes per shift without compensation.

43.    Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other MSRs for no less than ten (10) to 15 minutes per day of work performed in connection with their pre-shift startup and login activities.

44.    The unpaid off-the-clock work performed prior to each shift by Plaintiff and other MSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as MSRs.

///

1

**B.    Meal Period Off-the-Clock Work**

2

45.    Defendant provides Plaintiff and the MSRs with one unpaid meal period per

3

shift.

4

46.    In order to deduct an unpaid meal period from an employees' compensable

5

time, an employee must be completely relieved of his or her employment duties for the

6

entire lunch break. 29 CFR 785.19(a) states:

7

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide
8
> meal periods do not include coffee breaks or time for snacks. These are rest
> periods. The employee must be *completely relieved* from duty for the
9
> purposes of eating regular meals. Ordinarily 30 minutes or more is long
> enough for a bona fide meal period. A shorter period may be long enough
10
> under special conditions. The employee is not relieved if he is required to
> perform any duties, whether active or inactive, while eating. For example, an
11
> office employee who is required to eat at his desk or a factory worker who is
> required to be at his machine is working while eating. (Emphasis added).

12

47.    However, Defendant does not provide Plaintiff and the MSRs with a

13

legitimate bona fide meal period.

14

48.    Defendant fails to provide a bona fide unpaid meal period because it requires

15

Plaintiff and the MSRs to return to their work stations prior to the end of their meal

16

periods and then to spend off-the-clock time logging back into the necessary

17

computer/software programs and applications needed to begin taking calls promptly at

18

the end of their scheduled meal periods.

19

49.    The work performed by Plaintiff and Defendant's MSRs during their unpaid

20

meal periods takes substantial time on a daily basis with said time averaging ten (10)

21

minutes per day, or more.

22

**C.    Post-Shift Off-the-Clock Work**

23

50.    Pursuant to Defendant's policies, training and direction, Plaintiff and all

24

other MSRs are required to shut down and logout of certain computer programs and

25

applications they used during their shift *after* they log-out of Defendant's timekeeping

26

system.   The post-shift logout and shutdown process takes substantial time on a daily

27

basis with said time ranging from five (5) to ten (10) minutes per shift, but can take

28

substantially longer if the MSR experiences technical problems with the computer/software/applications or is required to perform program or system updates.

51. Pursuant to Defendant's policies, training and direction, a substantial portion, if not all, of the shutdown and log-out process occurs after Plaintiff and the MSRs' shifts end and after they clock out of Defendant's timekeeping system.

52. Consequently, Defendant maintains a common plan and policy pursuant to which it fails to pay Plaintiff and its other MSRs for no less than five (5) to ten (10) minutes per day of work performed in connection with their end of shift shutdown and log-out activities.

53. The unpaid off-the-clock work performed subsequent to each shift by Plaintiff and other MSRs directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as MSRs.

**D. Defendant Benefitted from the Uncompensated Off-the-Clock Work**

54. At all relevant times, Defendant directed and directly benefited from the work performed by Plaintiff and similarly situated employees in connection with the above described pre-shift, meal period and post-shift activities performed by Plaintiffs and other MSRs.

55. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Plaintiff and other MSRs.

56. At all relevant times, Defendant was able to track the amount of time Plaintiff and the other MSRs spent in connection with the pre-shift, meal period and post-shift activities. However, Defendant failed to do so and failed to compensate Plaintiff and other MSRs for the off-the-clock work they performed.

57. At all relevant times, Plaintiff and the MSRs were non-exempt hourly employees, subject to the requirements of the FLSA and the California Labor Code.

58. At all relevant times, Defendant used its attendance and adherence policies

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

against Plaintiff and the MSRs in order to pressure them into performing the pre-shift, meal period and post-shift off-the-clock work.

59.    Defendant expressly trained and instructed Plaintiff and its other MSRs to perform the above-described pre-shift activities before clocking into Defendant's timekeeping system and their shift's scheduled start time to ensure they were prepared to take calls at the moment their shifts began.

60.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the MSRs of wages owed for the pre-shift, meal period, and post-shift activities they performed. Because Defendants' MSRs typically worked forty (40) hours or more in a workweek and/or eight (8) hours or more in a workday, Defendant's policies and practices also deprived them of overtime pay.

61.    Defendant knew or should have known that the time spent by Plaintiff and other MSRs in connection with the pre-shift, meal period and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

62.    Despite knowing Plaintiff and other MSRs performed work before and after their scheduled shifts and during their meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

## FLSA COLLECTIVE ACTION ALLEGATIONS

63.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> ***All similarly situated current and former hourly Member Services Representatives who work or have worked for Defendant at any time from August 7, 2015 through judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

64.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and other similarly situated MSRs.

65.    Excluded from the proposed FLSA Collective are Defendant's executives,

administrative and professional employees, including computer professionals and outside sales persons.

66.    Consistent with Defendant's policy and pattern or practice, Plaintiff and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

67.    All of the work that Plaintiff and the members of the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that Plaintiff and the FLSA Collective have performed.

68.    As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

a.    Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, premium overtime wages for hours that they worked in excess of 40 hours per workweek;

b.    Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

69.    Defendant is aware or should have been aware that federal law required it to pay Plaintiff and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

70.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

71.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

72.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal-period time, and the amount of post-shift log-out/shut-down time owed to each employee – does not vary substantially among the proposed FLSA Collective members.

73.     There are many similarly situated current and former MSRs who have been underpaid in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

74.     This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

75.     Those similarly situated employees are known to Defendant, are readily identifiable and can be located through Defendant's records.

76.     Plaintiff estimates that the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundreds, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

77.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of all similarly situated current and former employees of Defendant who are or were employed to provide services to its clients at any time in the last four years.  Plaintiff proposes the following class definition:

> ***All current and former hourly Member Services Representatives who work or have worked for Defendant at any time from August 7, 2014 through judgment.***

Plaintiff reserves the right to amend the putative class definition if necessary.

78.     Plaintiff shares the same interests as the putative class and will be entitled under the California Labor Code to unpaid overtime compensation, attorneys' fees, and costs and lost interest owed to her under nearly identical factual and legal standards as the remainder of the putative class.

79.     The putative Class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant period, Defendant employed hundreds, if not thousands, of MSRs throughout California.  The Class members are so numerous that joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The precise number of Class members should be readily available from a review of Defendant's personnel, scheduling, time, phone, and payroll records, and from input received from the putative Class members.

80.     The putative Class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, Defendant engaged in a common course of conduct that violated the legal rights of Plaintiff and the Class.   Individual questions that Plaintiff's claims present, to the extent any exist, will be far less central to this litigation than the numerous material questions of law and fact common to the Class, including but not limited to:

a.      Whether Defendant engaged in a policy or practice of failing to pay each Class member regular wages for each non-overtime hour worked.

b.      Whether Defendant engaged in a policy or practice of failing to pay each Class member overtime compensation for each overtime hour worked;

c.      Whether Defendant violated Labor Code sections 221 and 223 by making unlawful deductions to Class members' wages;

d.      Whether Defendant failed to provide each Class member with at least one 30-minute meal period on every workday of at least 5 hours and a second 30-minute meal period on every workday of at least 10 hours as required by the California Employment Law and Regulations;

e.      Whether Defendant violated section 226 of the Labor Code by willfully failing to provide accurate itemized wage statements showing the number of hours worked by each Class member and the corresponding hourly rate;

f.      Whether Defendant violated section 1174 of the Labor Code by failing to maintain accurate records of hours worked and wages paid to Class members;

g.      Whether Defendant was unjustly enriched by the work and services performed by Class members without compensation;

h.      Whether Defendant engaged in unfair business practices in violation of Business and Professions Code section 17200 *et seq.*; and

i.    Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating California state law.

81.    The status of all individuals similarly situated to Plaintiff raises an identical legal question: whether Defendant's MSRs are entitled to back wages, including overtime.

82.    The putative Class meets the typicality requirement of Rule 23(a)(3) because Plaintiff and the putative Class members were all employed by Defendant and performed their job duties without receiving wages, including overtime wages, owed for that work.

83.    The Class meets the adequacy requirement of Rule 23(a)(4) because there is no apparent conflict of interest between Plaintiff and the putative Class members, and because Plaintiff's attorneys have successfully prosecuted many complex class actions, including wage and hour class and collective actions, and will adequately represent the interests of Plaintiff and the putative Class members.

84.    The putative Class meets the predominance requirement of Rule 23(b)(3), because issues common to the Class predominate over any questions affecting only individual members, including but not limited to, those listed above.

85.    The Class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve this controversy through a class action would permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.

86.    Given the material similarity of the Class members' claims, even if each Class member could afford to litigate a separate claim, this Court should not countenance or require the filing of hundreds or even thousands of identical actions.  Individual litigation of the legal and factual issues raised by Defendant's conduct would cause unavoidable delay, a significant duplication of efforts, and an extreme waste of resources. Alternatively, proceeding by way of a class action would permit the efficient supervision of the putative Class's claims, create significant economies of scale for the Court and the

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND

parties and result in a binding, uniform adjudication on all issues.

**COUNT I**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

87.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

88.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

89.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

90.     Plaintiff and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

91.     Plaintiff and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

92.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

93.     At all times relevant to this action, Defendant required Plaintiff and the FLSA Collective to perform no less than fifteen (15) and as much as twenty-five (25) minutes (or more during shifts when they experienced technical problems) of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

94.     The off-the-clock work performed every shift by Plaintiff and the FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

95.     In workweeks where Plaintiff other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including the shift differential where applicable.  29 U.S.C. § 207.

96.    Defendant's violations of the FLSA were knowing and willful. Defendant knew or could have determined how long it takes for the MSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the FLSA Collective for these work activities, but did not.

97.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 510, 1194, 1197.1, 1198
AND IWC WAGE ORDER 4 – FAILURE TO PAY OVERTIME WAGES**

98.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

99.    At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to their employees, especially overtime compensation.

100.    At all relevant times, Plaintiff and the Rule 23 California Class regularly performed non-exempt work and were thus subject to the overtime requirements of California law.

101.    California Labor Code §§ 223, 510, 1194, 1197.1 1198 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K) provide that; (a) employees must be paid no less than the applicable minimum wage for all hours worked; (b) employees are entitled to compensation at the rate of one and one-half times their regular rate of pay for all hours worked in excess of eight (8) hours in a workday up to twelve (12) hours in a workday, in excess of forty (40) hours in a workweek, and for the first eight (8) hours of work on the seventh (7th) consecutive day or a workweek; and (c) employees are entitled to compensation at the rate of twice their regular rate of pay for all hours worked in excess of twelve (12) hours in a workday, and in excess of eight (8) hours on the seventh (7th) consecutive day of work in a workweek.

102.   At all relevant times, Plaintiff and the Rule 23 California Class regularly worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek.

103.   At all relevant times, Defendant failed and refused to pay Plaintiff and the Rule 23 California Class members for any and all hours actually worked in excess of the scheduled shift.

104.   Defendant intentionally, maliciously, fraudulently and with the intent to deprive the Rule 23 California Class of their ability to earn a living to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying overtime by reducing the rate of pay to Plaintiffs and other Rule 23 California Class members who worked overtime hours.

105.   Plaintiff and the Rule 23 California Class were entitled to receive overtime compensation at their lawful regular rate of pay, including any shift differential where applicable. Defendant's failure to pay lawful premium overtime wages, as alleged above, was a willful violation of Labor Code §§ 223, 510, 1194, 1197.1, 1198, and IWC Wage Order No. 4.

106.   Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked, as well as overtime premiums owing, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked and such premium compensation, as is required under California law.

**COUNT III**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 223, 1194, 1197, 1197.1 AND IWC WAGE ORDER 4 – FAILURE TO PAY MINIMUM WAGES AND REGULAR WAGES FOR ALL HOURS WORKED**

107.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

108.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, including minimum wage

and regular wages for all hours worked.

109.   California Labor Code §§ 223, 1194, 1197, 1197.1 and Industrial Welfare Commission ("IWC") Wage Order No. 4 §§ 2(K), 4(B), provide that employees must be paid no less than the applicable minimum wage for all hours worked. *See also Armenta v. Osmose, Inc*., 135 Cal. App. 4th 314, 323 (2005) (indicating that California's Labor Code requires payment for all hours worked at the employee's regular rate of pay).

110.   At all relevant times, Defendant failed and refused to pay Plaintiff, and the Rule 23 California Class members, minimum wage and regular wages for all hours worked including the off-clock-work alleged in this Complaint.

111.   Defendant intentionally, maliciously, fraudulently and with the intent to deprive Plaintiff and the Rule 23 California Class of their ability to earn a living to reduce their labor costs, knowingly and willingly implemented a scheme or artifice to avoid paying Plaintiff, and other Rule 23 California Class members, minimum wage and regular wages for all hours worked.

112.   Plaintiff and the Rule 23 California Class were entitled to receive wages at their lawful regular rate of pay, including any shift differential where applicable, for all hours worked including the off-the-clock work alleged in this Complaint. Defendant's failure to pay such wages, as alleged above, was a willful violation of California Labor Code §§ 223, 1194, 1197, 1197.1 and IWC Wage Order No. 4 §§ 2(K), 4(B)

113.   Wherefore, Plaintiff demands payment of the unpaid balance of the full amount of wages due for unpaid time worked at their lawful regular rate of pay, including any shift differential where applicable, and including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 1194 and 1194.2 as a result of Defendant's, failure to pay for all time worked as is required under California law.

## COUNT IV
## VIOLATION OF CALIFORNIA LABOR CODE §§ 221 AND 223
## UNLAWFUL DEDUCTIONS

114.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

115.   At all relevant times, Defendant regularly and consistently maintained corporate policies and procedures designed to reduce labor costs by reducing or minimizing the amount of compensation paid to its employees, especially overtime compensation, minimum wage and regular wages for all hours worked.

116.   Defendant made deductions from Plaintiff's and the Rule 23 California Class members' paychecks in the amount of the overtime premiums, minimum wage and regular wages earned by the employees during the pay period so as to avoid paying overtime compensation, minimum wage and regular wages.

117.   California Labor Code § 221 provides it is unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by employer to employee.

118.   Labor Code § 223 provides that where any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract. Labor Code section 225 further provides that the violation of any provision of Labor Code §§ 221 and 223 is a misdemeanor.

119.   As a result of the conduct alleged above, Defendant has unlawfully collected or received from Plaintiff and the Rule 23 California Class part of the wages paid to their employees.

120.   Wherefore, Plaintiff demands the return of all wages unlawfully deducted from the paychecks, including interest thereon, penalties, reasonable attorneys' fees, and costs of suit pursuant to Labor Code §§ 225.5 and 1194.

**COUNT V**
**VIOLATION OF CALIFORNIA LABOR CODE §§ 226.7, 512 AND**
**IWC WAGE ORDER 4 – FAILURE TO PROVIDE MEAL BREAKS**

121.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

122.   California Labor Code §§ 226.7, 512, and Industrial Welfare Commission ("IWC") Wage Order No. 4 § §11(A) and (B) provide that an employer may not employ a

person for a work period of more than five (5) hours without providing the employee with a meal period of not less than thirty (30) minutes, and may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than (30) minutes.

123.   At all relevant times, Plaintiff and the Rule 23 California Class consistently worked in excess of five (5) or ten (10) hours in a day.

124.   At all relevant times, Defendant regularly required employees to perform work during their first and/or second meal periods without proper compensation. Defendant's practice of requiring employees to perform work during their legally mandated meal periods without premium compensation is a violation of Labor Code §§ 226.7 and 512, and IWC Wage Order No. 4 § §11(A) and (B).

125.   Defendant purposefully elected not to provide meal periods to Plaintiff and the Rule 23 California Class members, and Defendant acted willfully, oppressively, and in conscious disregard of the rights of Plaintiff and the Rule 23 California Class members in failing to do so.

126.   Plaintiff is informed and believes Defendant did not properly maintain records pertaining to when Plaintiff and the Rule 23 California Class members began and ended each meal period, in violation of Labor Code §1174 and IWC Wage Order No. 4 § §11(A) and (B).

127.   As a result of Defendant's knowing, willful, and intentional failure to provide meal breaks, Plaintiff and the Rule 23 California Class members are entitled to recover one (1) additional hour of pay at the employee's regular rate of pay for each work day that a meal period was not provided, pursuant to California Labor Code § 226.7 and IWC Wage Order No. 7 § 11(D), and penalties, reasonable attorneys' fees, and costs pursuant to California Labor Code §§ 218.5.

128.   Defendant's wrongful and illegal conduct in failing to provide Plaintiff and the Rule 23 California Class members with meal breaks or to provide premium compensation, unless and until enjoined by order of this Court, will continue to cause

great and irreparable injury to Plaintiff and the Rule 23 California Class members in that Defendant will continue to violate these laws unless specifically ordered to comply with the same. The expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are already entitled. Plaintiffs and the Rule 23 California Class members have no other adequate remedy at law to insure future compliance with the laws alleged herein to have been violated.

129. Wherefore, Plaintiff demands pursuant to Labor Code Section 226.7(b) that Defendant pay each Rule 23 California Class member one additional hour of pay at the Rule 23 California Class member's regular rate of compensation for each workday that the meal period was not provided.

## COUNT VI
## VIOLATION OF CALIFORNIA LABOR CODE § 226
## FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS

130. Plaintiff re-alleges and incorporates all previous paragraphs herein.

131. California Labor Code § 226 provides that every employer shall, semi-monthly or at the time of payment of wages, furnish each employee, either as a detachable part of the check or separately, an accurate, itemized statement in writing showing gross wages earned, total hours worked, and the applicable hourly rates and corresponding number of hours worked. California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A) likewise require employers to maintain records of hours worked daily and wages paid to employees.

132. At all relevant times, Defendant failed to furnish Plaintiff and the Rule 23 California Class members, either semi-monthly or at the time of each payment of wages, an accurate, itemized statement conforming to the requirements of California Labor Code § 226.

133. At all relevant times, Defendant also failed to maintain accurate records of hours worked daily and wages paid to employees as required by California Labor Code § 1174(d) and California Wage Order 4-2001 § 7(A).

134.   Plaintiff is informed and believes that Defendant knew or should have known that Plaintiff and the Rule 23 California Class members were entitled to receive wage statements compliant with California Labor Code § 226, and that Defendant willfully and intentionally failed to provide Plaintiff and the Rule 23 California Class members with such accurate, itemized statements.

135.   Wherefore Plaintiff demands that Defendant pay each and every Rule 23 California Class member fifty dollars ($50.00) for the initial pay period in which the violation occurred and one hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand dollars ($4,000.00) pursuant to California Labor Code § 226, as well as reasonable attorneys' fees and costs.

## COUNT VII
## VIOLATION OF BUSINESS AND PROFESSIONS CODE, § 17200, *et seq.*

136.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.   Defendant engaged and continues to engage in unfair business practices in California by practicing, employing and utilizing the unlawful practices described above, including (a) training and directing Plaintiff and the Rule 23 California Class to work off-the-clock without compensation; (b) making deductions to Plaintiff's and the Rule 23 California Class members' paychecks to recover overtime premiums, minimum wage and regular wages earned by the employee; (c) requiring Plaintiff and the Rule 23 California Class to work overtime without lawful premium compensation; (d) failing to provide lawful meal breaks or premium compensation in lieu thereof; and (e) failing to provide accurate, itemized wage statements.

138.   In addition, the conduct alleged in each of the previously stated causes of action constitute an unlawful and for unfair business practice within the meaning of Business & Professions Code § 17200, *et seq.*

139.   As a result of Defendant's conduct, Plaintiff and the Rule 23 California Class have been harmed as described in the allegations set forth above.

140.   The actions described above, constitute false, unfair, fraudulent and deceptive

business practices within the meaning of California Business & Professions Code § 17200, *el seq.* By and through such unfair, unlawful and/or fraudulent business practices, Defendant has obtained valuable property, money and services from Plaintiff and the Rule 23 California Class, and has deprived Plaintiff and the Rule 23 California Class fundamental rights and privileges guaranteed to all employees under California law.

141.  Defendant has been unjustly enriched by the policies and practices described herein, and those policies and practices conferred an unfair business advantage on Defendant over other businesses providing similar services, which routinely comply with the requirements of California law.

142.  Plaintiff seeks, on her own behalf, and on behalf of the putative Rule 23 California Class members, full restitution of all monies withheld, acquired and/or converted by Defendant by means of the unfair practices complained of herein, as necessary and according to proof, and/or disgorgement of all profits acquired by Defendant by means of the acts and practices described herein.

143.  Plaintiff seeks, on her own behalf, and on behalf of other Rule 23 California Class members similarly situated, an injunction to prohibit Defendant from continuing to engage in the unfair business practices complained of herein. Defendant's unlawful conduct, as described above, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and all Rule 23 California Class members in that the Defendant will continue to violate these California laws unless specifically ordered to comply with the same. This expectation of future violations will require current and future employees to repeatedly, and continuously, seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff and the Rule 23 California Class have no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Dionka Banks, on her own behalf and on the behalf of the putative Collective and Rule 23 California Class members, requests judgment as

follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Designating Plaintiff as Representative of the proposed FLSA Collective;

c.   Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all those individuals who are similarly situated to Plaintiff, and permitting Plaintiff to send notice of this action to all those similarly situated individuals including the publishing of notice in a manner that is reasonably calculated to apprise the potential collective members of their rights under the FLSA;

d.   Certifying the proposed Rule 23 California Class;

e.   Designating Plaintiff as Representative of the proposed Rule 23 California Class;

f.   Awarding a service award to the Class Representative in recognition of the time, effort, and risk she incurred in bringing this action and as compensation for the value she has provided to the Class members;

g.   Appointing Sommers Schwartz, P.C. and Finkelstein & Krinsk, LLP as Class                                                                                      Counsel; Issuing a declaratory judgment that the practices complained of herein are unlawful under the FLSA, California Labor Code, and UCL;

h.   Declaring that Defendant willfully violated the Fair Labor Standards Act and its attendant regulations as set forth above;

i.   Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid overtime wages calculated at the rate of one and one-half (1.5) of Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked in excess of eight (8) hours per day and/or forty (40) hours per week for the past four years;

j.   Awarding liquidated damages in an amount equal to the amount of unpaid overtime wages found due and owing;

k.   Granting judgment in favor of Plaintiff and against Defendant and awarding the amount of unpaid minimum wages and regular wages calculated at Plaintiff's regular rate (including the shift differential where applicable) multiplied by all off-the-clock hours that Plaintiff worked for the past four years;

l.   Awarding liquidated damages in an amount equal to the amount of unpaid minimum wages and regular wages found due and owing;

m.   For statutory and civil penalties pursuant to Labor Code §§ 225.5, 226(e), 226.3, 226.7, and 2699;

n.   For disgorgement and restitution to Plaintiff and other similarly affected Class members of all funds unlawfully acquired by Defendant by means of

25

any acts or practices declared by this Court to violate the mandate established by California Business and Professions Code § 17200 *et seq.*;

o.    For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendant and determined to have been wrongfully acquired by Defendant as a result of violations of California Business and Professions Code § 17200, *et seq.*;

p.    For an injunction prohibiting Defendant from engaging in the unfair business practices complained of herein;

q.    For an injunction requiring Defendant to give notice to persons to whom restitution is owing of the means by which to file for restitution;

r.    For actual damages or statutory penalties according to proof as set forth in California Labor Code §§ 226, 1174, and IWC Wage Order No. 7, § 7(A) related to wage statements and record keeping;

s.    For an order requiring Defendant to show cause, if any there be, why they should not be enjoined and ordered to comply with the applicable California Industrial Welfare Commission wage orders related to record keeping for Defendant's employees related to same; and for an order enjoining and restraining Defendant and their agents, servants and employees related thereto;

t.    For pre-judgment interest as allowed by California Labor Code §§ 218.6, 1194, and California Civil Code § 3287 and other statutes;

u.    For reasonable attorneys' fees, expenses, and costs as provided by the FLSA, 29 U.S.C. 216(b), California Labor Code §§ 218.5, 226(e) and (h), 1194, and 2699, and California Code of Civil Procedure § 1021.5; and

v.    For such other and further relief the Court may deem just and proper.

## JURY DEMAND

Plaintiff, Dionka Banks, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: August 8, 2018                    Respectfully Submitted,

DAVID YEREMIAN & ASSOCIATES, INC.

By: ___/s/ David Yeremian___
David Yeremian (Cal. Bar No. 226337)
david@yeremianlaw.com
535 N. Brand Blvd., Suite 705
Glendale, California 91203
(818) 230-8380

26

1

2

3

4

5

6   forthcoming)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Trenton R. Kashima
trk@classactionlaw.com
FINKELSTEIN & KRINSK, LLP
550 West C St., Suite 1760
San Diego, CA 92101
(619) 238-1333

Kevin J. Stoops (*pro hac vice* forthcoming)
kstoops@sommerspc.com
Jason T. Thompson (*pro hac vice*

jthompson@sommerspc.com
SOMMERS SCHWARTZ, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

*Trial Counsel for Plaintiff, Proposed Class,
and Collective Members*

COLLECTIVE AND CLASS COMPLAINT AND JURY DEMAND